IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

FRANCHETT JONES
2450 Elvans Road, SE, Washington, DC 20020
 *Plaintiff,*

    v.

DISTRICT OF COLUMBIA HOUSING
AUTHORITY,
1133 N. Capitol St., NE, Washington, DC 20002
and

MICHAEL KELLY, EXECUTIVE
DIRECTOR, DISTRICT OF COLUMBIA
HOUSING AUTHORITY,
1133 N. Capitol St., NE, Washington, DC 20002
and

LORRY BONDS, ADA/504 COORDINATOR,
DISTRICT OF COLUMBIA HOUSING
AUTHORITY
1133 N. Capitol St., NE, Washington, DC 20002
 *Defendants.*

(On removal from the
Superior Court of the
District of Columbia;
Case No. 2007 CA 007324B)

## NOTICE OF REMOVAL

Defendants, District of Columbia Housing Authority, Michael Kelly, and Lorry

Bonds, hereby give notice pursuant to 28 U.S.C. §§ 1441(b) and 1446, that they are

removing the action entitled Franchett Jones v. District of Columbia Housing Authority,

et al., in the Superior Court of the District of Columbia, Case Number 2007 CA 007324

B from the Superior Court of the District of Columbia to the United States District Court

of the District of Columbia. A Copy of this Notice of Removal is being filed with the

Clerk of the Superior Court for the District of Columbia to thereby effect removal to the

United States District Court for the District of Columbia and that court shall proceed no further unless the case is remanded.

## STATEMENT OF GROUNDS FOR REMOVAL

As its Statement of Grounds for Removal, Defendants states as follows:

1.    Plaintiff commenced this action when she filed her Complaint in the Superior Court for the District of Columbia, Civil Action No. 2007 CA 007324 B. Plaintiff alleges that Defendants failed to timely respond to her request for a reasonable accommodation for her mobility impairment and failed to transfer her to a fully accessible unit in violation of the Fair Housing Act and Section 504 of the 1973 Rehabilitation Act.

2.    The Summons and Complaint were received by Defendants on November 2, 2007.  A copy of the Complaint and all other process received is attached hereto as Exhibit A.  Therefore, this Notice of Removal is being filed within thirty (30) days of the date the Complaint was received by Defendants.

3.    Among its Claims in its Complaint, Plaintiff is alleging that Defendants violated Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794(a), and related federal regulations, 24 C.F.R. pt. 8; 24 C.F.R. pt. 40 & App. A.  Plaintiff is further alleging that Defendants violated Fair Housing Act Amendments, 42 U.S.C. §§3601-3604; 24 C.F.R. §100.204.  Accordingly, 28 U.S.C. § 1441(b) provide the bases for removal of this action.

4.    Furthermore, as this matter involves common issues of fact with Annette Young, et al. v. District of Columbia Housing Authority, et al., Case No. 01-cv-00650,

currently pending before the Honorable James Robertson, Defendants submit that this matter should be assigned as a related case to Judge Robertson pursuant to Local Civil Rule 40.5(c)(1) of the Federal Rules of Civil Procedure. A copy of the Notice of Designation of Related Civil Cases Pending in This or Any Other United States Court is attached hereto as Exhibit B.

5.    On November 30, 2007, a Notice of Filing of Removal was filed in the Superior Court of the District of Columbia advising that Court that, pursuant to 28 U.S.C. § 1446(d), it "shall proceed no further unless and until the [matter] is remanded." The Notice of Filing of Notice of Removal is attached hereto as Exhibit C.

WHEREFORE, this action now pending in the Superior Court of the District of Columbia is properly removed to this Court pursuant to 28 U.S.C. § 1441 and 1446.

November 30, 2007

Respectfully submitted,
**DOUGLAS & BOYKIN, PLLC**

Frederick A. Douglas, Esq. Bar No. 197897
Curtis A. Boykin, Esq. Bar No. 444120
Margaret McFarland, Esq. Bar No. 351072
Robert Dillard, Esq. Bar No. 492948
Douglas & Boykin PLLC
1850 M Street, NW Suite 640
Washington, D.C. 20036
(202) 776-0370
(202) 776-0975 fax
*Counsel for Defendants*

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __DC__
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __DC__
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Marjorie Rifkin, Esq.
University Legal Services
220 I St., NE #130 Washington, DC 20002, 202-547-0198

ATTORNEYS (IF KNOWN)   Frederick A. Douglas, Esq.
Douglas & Boykin, PLLC
1850 M St., NW Suite 640
Washington, DC 20036, 202-776-0370

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ☐ **A. Antitrust** | ☐ **B. Personal Injury/ Malpractice** | ☐ **C. Administrative Agency Review** | ☐ **D. Temporary Restraining Order/Preliminary Injunction** |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

☐ **E. General Civil (Other)** OR ☐ **F. Pro Se General Civil**

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

<table>
<tr><td>

☐ **G.** *Habeas Corpus/*
*2255*

☐ 530 Habeas Corpus-General
☐ 510 Motion/Vacate Sentence

</td><td>

☐ **H.** *Employment*
*Discrimination*

☐ 442 Civil Rights-Employment
(criteria: race, gender/sex,
national origin,
discrimination, disability
age, religion, retaliation)

*(If pro se, select this deck)*

</td><td>

☐ **I.** *FOIA/PRIVACY*
*ACT*

☐ 895 Freedom of Information Act
☐ 890 Other Statutory Actions
(if Privacy Act)

*(If pro se, select this deck)*

</td><td>

☐ **J.** *Student Loan*

☐ 152 Recovery of Defaulted Student
Loans (excluding veterans)

</td></tr>
<tr><td>

☐ **K.** *Labor/ERISA*
*(non-employment)*

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting &
Disclosure Act
☐ 740 Labor Railway Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

</td><td>

☒ **L.** *Other Civil Rights*
*(non-employment)*

☐ 441 Voting (if not Voting Rights
Act)
☒ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights
☐ 445 American w/Disabilities-
Employment
☐ 446 Americans w/Disabilities-
Other

</td><td>

☐ **M.** *Contract*

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment &
Enforcement of Judgment
☐ 153 Recovery of Overpayment of
Veteran's Benefits
☐ 160 Stockholder's Suits
☐ 190 Other Contracts
☐ 195 Contract Product Liability
☐ 196 Franchise

</td><td>

☐ **N.** *Three-Judge Court*

☐ 441 Civil Rights-Voting (if Voting
Rights Act)

</td></tr>
</table>

**V. ORIGIN**

☐ 1 Original
Proceeding

☒ 2 Removed
from State
Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated
or Reopened

☐ 5 Transferred from
another district
(specify)

☐ Multi district
Litigation

☐ 7 Appeal to
District Judge
from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. 794(a); 42 U.S.C. Sections 3601-3604, 24 C.F.R. 100.204

---

**VII. REQUESTED IN
COMPLAINT**    CHECK IF THIS IS A CLASS
☐ ACTION UNDER F.R.C.P. 23

**DEMAND $**
$30,000

Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S)
IF ANY**    (See instruction)    ☒ YES ☐ NO    If yes, please complete related case form.

DATE 11/30/07    SIGNATURE OF ATTORNEY OF RECORD    *Frederick L. Douglas* (AB)

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT A



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

FRANCHETT F JONES
Vs.

DISTRICT OF COLUMBIA HOUSING AUTHORITY

C.A. No.    2007 CA 007324 B

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge GEOFFREY M ALPRIN
Date:  November 1, 2007
Initial Conference: 9:00 am, Friday, February 01, 2008
Location:  Courtroom 320
　　　　　　500 Indiana Avenue N.W.
　　　　　　WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

Francheil Jones

*Plaintiff*

vs.

Civil Action No. _____

District of Columbia Housing Authority

*Defendant*

0007321-07

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

_____
Name of Plaintiff's Attorney

By _____

_____
Address
                                                    Deputy Clerk

_____
Telephone

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Franchett Jones                           *Plaintiff*

vs.                                                              Civil Action No. _____

District of Columbia Housing Authority
                                            *Defendant*

### SUMMONS

To the above named Defendant: Larry Bonds

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Maxine Brame  Bar #437076
_____                    *Clerk of the Court*
Name of Plaintiff's Attorney

University Legal Services
_____          By _____
Address                                                                      Deputy Clerk
300 I St. NE Wash DC 20002

202-547-0198 x1 128
_____          Date _____
Telephone

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03


CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

Franchett Jones

_____
*Plaintiff*

vs.

District Of Columbia Housing Authority
_____
*Defendant*

C00073__-07

Civil Action No. _____

## SUMMONS

To the above named Defendant: Michael Kelly

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Marjorie Rifkin Bar #457076
_____
Name of Plaintiff's Attorney

University Legal Services
_____
Address

220 I St. NE # 130, Wash DC 2002
_____

202-817-0198 ext 128
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

## IN THE SUPERIOR COURT OF THE
## DISTRICT OF COLUMBIA

---

**FRANCHETT JONES,**
2450 Elvans Road, SE, Washington, DC 20020

                                        Plaintiff,

v.                                                      CIVIL ACTION

**DISTRICT OF COLUMBIA HOUSING AUTHORITY,**
1133 N. Capitol St. NE, Washington, DC 20002

and

**MICHAEL KELLY, EXECUTIVE DIRECTOR**
**DISTRICT OF COLUMBIA HOUSING AUTHORITY,**
1133 N. Capitol St. NE, Washington, DC 20002

and

**LORRY BONDS, ADA/504 COORDINATOR,**
**DISTRICT OF COLUMBIA HOUSING AUTHORITY,**
1133 N. Capitol St NE, Washington, DC  20002

                                        Defendants.

---

RECEIVED
CIVIL CLERK'S OFFICE
NOV - 1 2007
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

## COMPLAINT

## I.    INTRODUCTION

1.  Plaintiff Franchett Jones is a 34-year-old woman with mobility disabilities who currently lives in an inaccessible public housing unit that is under the District of Columbia Housing Authority ["DCHA"].  Despite her requests dating back to November 2005, Defendant DCHA has denied Ms. Jones access to a wheelchair-accessible public housing unit, in violation of  Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794 et seq. ("Section 504"), the Fair Housing Act

Amendments, 42 U.S.C. §§ 3601-3604, the D.C. Human Rights Act, D.C. Code §2-1401.01 et seq., and D.C. Municipal Regulations, title 14, §§ 6113, 6400, 7403, and 7404.

## II.    JURISDICTION

2.  This Court has jurisdiction of this matter under Title 6 D.C. Code § 11-921.

## III.    PARTIES

### A.  Plaintiff

3.  Plaintiff Franchett Jones is a resident of Washington, D.C. where she lives with her four children.

4.  Ms. Jones is an individual with a disability as defined in Section 504 and the Fair Housing Act Amendments because she has severe rheumatoid arthritis which substantially impairs her major life activity of walking, as well as manual tasks. Ms. Jones uses a motorized wheelchair for ambulation.

### B.  Defendants

5.  Defendant District of Columbia Housing Authority ("DCHA") is an "instrumentality of District government" that receives federal funds to plan, develop, and operate the system of public and subsidized housing in the District. DCHA is a recipient of federal funds as defined by Section 504, 29 U.S.C. § 794(a).

6.  Defendant Michael P. Kelly is the Executive Director of DCHA. Mr. Kelly is named in his official capacity, under which he is required to "[a]dminister, manage, and direct the affairs" of DCHA, which includes the development of all

aspects of the operations of the public housing system pursuant to Title 5 D.C. Code § 5-125.

7.  Defendant Lorry Bonds is the Section 504/ADA Coordinator of DCHA. As such, she is responsible for DCHA's compliance with the regulations promulgated by HUD under Section 504, the Fair Housing Act, with the District of Columbia's relevant statutes and regulations that prohibit disability-based discrimination in public housing.  Ms. Bonds is named in her official capacity.  Ms. Bonds processes requests from public housing tenants with mobility disabilities seeking transfers to accessible units as a reasonable accommodation. Title 13 DCMR §§6401.4, 7404; Amended Voluntary Compliance Agreement dated May 1, 2006 at § E.2.a.iii, at p.19 ("transfers of residents with disabilities and placement of applicants with disabilities requiring UFAS-Accessible units will be centrally coordinated through DCHA's Section 504/ADA Coordinator's Office.").

## IV.    FACTS

8.  Plaintiff Franchett Jones lives in an inaccessible two-story, three-bedroom public housing unit at 2450 Elvans Road SE, which is owned and operated by DCHA. She has lived at this address since approximately December 2003. Ms. Jones has four children who live with her: a 16-year-old daughter, a 13-year-old son, a 7-year-old daughter, and 5-year-old daughter.

9.  Franchett Jones is compliant with all her DCHA lease provisions: she pays her rent and utility payments in a timely manner, and she has never engaged in criminal activity or disturbances.

10. Ms. Jones has severe rheumatoid arthritis and uses a wheelchair for mobility. In order to enter or exit her home, which is essential for her to attend her medical appointments, among other reasons, Ms. Jones must be carried up and down four steps, creating a considerable threat to her health and safety. In May 2007, Ms. Jones sustained minor injuries when her daughter and home health care aide attempted to lift her over the stairs while she is in her manual wheelchair.

11. Because her motorized wheelchair is too large and too heavy to maneuver and be lifted up and down the steps, Ms. Jones is forced to rely on a manual wheelchair which she cannot operate independently. This vastly limits her mobility.

12. Once inside of her home, Ms. Jones has access only to the first floor consisting of the living room and the kitchen. Fourteen steps separate her from the second floor of her home, consisting of her children's bedrooms and the only bathroom in the house. Due to her mobility disabilities, Ms. Jones – unlike able-bodied tenants of public housing -- cannot access the bedrooms or the only bathroom in the house because they are located on the second floor. Consequently, Ms. Jones is forced to live in the living room of the home where she is relegated to using a portable toilet and adult diapers. She must rely on sponge baths because she cannot access the bathtub or shower on the second floor of her home.

13. In addition to her inability to walk, Ms. Jones has limited manual dexterity. Consequently, Ms. Jones cannot independently handle such routine tasks as opening and closing the doors, reaching and operating appliances, plumbing fixtures, and light switches, among others.

14. Beginning in 2003, Ms. Jones requested reasonable accommodations based on her disabilities and presented to DCHA orders from her physicians stating that she has orthopedic disabilities and requires a unit with grab bars in the bathrooms, and no steps, in order to prevent injuries at her home. DCHA did not respond to these physician orders.

15. On November 2, 2005, Ms. Jones submitted to her DCHA property manager another request for a transfer to an accessible, four-bedroom public housing unit. Ms. Jones' physician again provided to DCHA all the necessary information to support Ms. Jones' transfer request.

16. Ms. Jones attempted to follow up her transfer request by communicating with Defendant Lorry Bonds at DCHA, who acknowledged receipt of Ms. Jones' Request for a Reasonable Accommodation dated November 2, 2005.

17. Beginning in November 2006, Ms. Jones was hospitalized for medical treatment. She was subsequently hospitalized, often for weeks at a time, again in December 2006 and February 2007. When she was discharged to her home in late February 2007, Ms. Jones again inquired about her prior requests to transfer to an accessible public housing unit.

18. On March 29, 2007, Ms. Jones' primary care physician Dr. Flory, provided additional medical information to Defendant Lorry Bonds on DCHA's designated form indicating that Ms. Jones is permanently disabled, uses a wheelchair upon which she depends, and needs a fully accessible unit with accessible outlets, lowered thermostat controls, accessible kitchen cabinets and sinks, bathroom

cabinets, bathtub/shower seats, toilets, and bathroom grab bars, among other accessible features.

19. On April 3, 2007, 17 months following Ms. Jones' submission of her transfer request, Defendant Lorry Bonds approved Ms. Jones' request for a four bedroom fully accessible dwelling unit.

20. In June 2007, DCHA acted on Ms. Jones' transfer request by referring Ms. Jones' name to Henson Ridge, which manages accessible public housing units under a contract with DCHA.  On information and belief, DCHA refers eligible public housing tenants in need of accessible housing to Henson Ridge to occupy the accessible public housing units at that development.

21. On June 28, 2007, Mi'esha Watson, Assistant Community Manager of Henson Ridge, sent a letter to Ms. Jones inviting Ms. Jones to contact the office regarding a unit there.

22. Ms. Jones met Ms. Watson at Henson Ridge where she completed the rental application, and provided her identification card.  Ms. Watson performed a credit check during Ms. Jones' visit and informed Ms. Jones that she did not fit the criteria of Level 3 or lower.  When Ms. Jones questioned why her public housing transfer request through DCHA was being reviewed according to criteria for new applicants, Ms. Watson referred Ms. Jones back to Defendant Lorry Bonds at DCHA.

23. On July 11, 2007, Henson Ridge mailed a notification letter to Ms. Jones stating that she was rejected for occupancy there.  The notice stated that Ms. Jones: Household failed to meet the Property's Screening Criteria specifically:

> Your credit report did not meet our screening criteria**
> [and] Other: Did not meet DC Housing Criteria.
> **Your consumer credit information was obtained from
> <u>EQUIFAX</u>. The credit bureau only collect[sic] and mange
> consumer credit information and do does[sic] not make
> credit decisions. Therefore, they will be unable to provide
> specific reasons why your residence has not been
> approved."

24. Henson Ridge's July 11, 2007 notice provided that: "If you disagree with this determination you have 14 days to respond in writing to this notice, or to request a meeting to discuss the rejection. If you desire such an informal meeting, we must hear from you by 14 days from the date of this letter. If we do not hear from you by the close of business on the 14th day, this denial shall be considered final." On information and belief, Ms. Jones sought to resolve the status of her transfer request by contacting Lorry Bonds, rather than appealing to Henson Ridge.

25. Ms. Jones repeatedly contacted Defendant Lorry Bonds to question the reasons for the denial of her transfer to an accessible unit at Henson Ridge. On information and belief, Ms. Bonds never explained which "DC Housing Criteria" Ms. Jones failed to meet in order to transfer to an accessible unit at Henson Ridge.

26. The notice from Henson Ridge provided that Ms. Jones' consumer credit information was obtained from Equifax, and that Ms. Jones could obtain a free copy of her credit information within sixty days of July 11, 2007, and that Ms. Jones had a right to dispute the accuracy or completeness of any information within her consumer credit report.

27. Ms. Jones was hospitalized for medical treatment on several occasions again in June 2007 and in October 2007.

28. As a result of DCHA's failure to transfer Ms. Jones to an accessible public housing unit, Ms. Jones has missed approximately 20 medical appointments in the past ten months. On information and belief, Ms. Jones has suffered a deterioration of her physical condition and emotional stress and humiliation from her confinement to the first floor of her home.

29. On September 12, 2007, Plaintiff's Counsel Marjorie Rifkin faxed a letter to Defendant Lorry Bonds seeking a transfer for Ms. Jones and her family to a fully accessible unit, and "a written denial stating the reason(s) for her rejection with a copy of the credit report at issue" by September 19, 2007. Plaintiff's Counsel resent the letter to Ms. Bonds on September 20, 2007 with a cover letter again seeking DCHA's response. DCHA failed to respond.

30. On October 2, 2007, Plaintiff's Counsel emailed Defendant Lorry Bonds and DCHA Acting General Counsel Hans Froelicher advising them that University Legal Services was drafting a Complaint on behalf of Ms. Jones "to effectuate her transfer request to an accessible 4 bedroom apartment at Henson Ridge." Upon request, Plaintiff's Counsel then resent for the second time the September 12, 2007 letter that had originally been faxed to Ms. Bonds. Plaintiff's Counsel left a voicemail message for Defendants' Counsel Hans Froelicher on October 23, 2007, and emailed him on October 25, 2007 to seek a resolution and to advise him again that Plaintiff is drafting her Complaint. To date, DCHA has failed to respond to Plaintiff's correspondence.

## V. FEDERAL MANDATES GOVERNING DCHA'S OBLIGATIONS TO PUBLIC HOUSING RESIDENTS WITH MOBILITY DISABILITIES

Section 504

31. Section 504 of the 1973 Rehabilitation Act prohibits recipients of federal funds from discriminating against people with disabilities. Section 504 provides:

> No otherwise qualified individual with a disability in the United States... shall, solely by reason of her disability of his disability, be excluded from the participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C.A. § 794 (a)

This prohibition applies to Federal financial recipients such as DCHA regardless of whether they are acting "directly or indirectly through contractual, licensing, or other arrangements." 24 C.F.R. § 8.4(b)(1).

32. Congress directed the Attorney General and all agency heads to promulgate regulations to carry out the statute. 29 U.S.C. § 794 (a). The U.S. Department of Housing and Urban Development ("HUD") accordingly promulgated implementing regulations in 1988 which specifically apply to public housing authorities including the District of Columbia Housing Authority. 24 C.F.R. pt. 8.

33. The HUD regulations require DCHA to build or renovate at least 5% of the public housing units to make them wheelchair accessible. 24 C.F.R. § 8.22(a), (b). The regulations further require that DCHA maximize occupancy of the accessible units by people with mobility disabilities who need the accessible features of these units. 24 C.F.R. § 8.27.

34. The HUD regulations define accessibility to "mean[] that the facility or portion of the facility when designed, constructed or altered, can be approached, entered, and used by individuals with physical handicaps." 24 C.F.R. § 8.3.

35. The Uniform Federal Accessibility Standards ("UFAS") were developed to address this need. 24 C.F.R. pt 40 & App.A. HUD adopted these UFAS regulations and incorporated them into the implementing regulations as of July 11, 1988. 24 C.F.R. § 8.32.

36. Section 504 requires that public housing be "accessible to and usable by people with disabilities." 24 C.F.R. §§ 8.22(a), (b), 8.23(b), 8.20. Consequently, public housing authorities must provide reasonable accommodations to people with disabilities upon their request for, inter alia, transfers to accessible public housing units, modifications of public housing units to meet the needs of residents, and assistance in the application and certification process to obtain or maintain housing. 24 C.F.R. §§8.4(b)(i), 8.24, 8.33. Section 504 does not require that claimants exhaust administrative grievance procedures prior to seeking relief through the courts.

Fair Housing Act Amendments

37. The Fair Housing Act Amendments [FHAA], 42 U.S.C. §3604(f), provide:

[I]t shall be unlawful--.../

2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--

(A) that person; or
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available[.]

42 U.S.C. §3604(f).

The FHAA defines discrimination to include:

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(3)(B); see also 24 C.F.R. §100.204; Joint Statement of DOJ-HUD, "Reasonable Accommodations under the Fair Housing Act," May 2004 (available via internet at www.usdoj.gov.).

38. The FHAA does not require exhaustion of administrative grievance procedures prior to seeking relief through litigation.

Amended Voluntary Compliance Agreement dated May 1, 2006 between HUD and DCHA

39. On May 1, 2006, DCHA entered into an Amended Voluntary Compliance Agreement (VCA) with HUD to address ongoing violations of Section 504.

40. Among other provisions, the VCA requires "Priority placement for existing DCHA applicants and residents with disabilities in DCHA's Mixed Income/New Construction "MINC" Developments" including Henson Ridge. VCA §E. 2.b. at p.20. The VCA also requires DCHA's Section 504/ADA Coordinator to review all policies and require the Private Owners and Management Agents ("POMAs") to adopt policies that conform to the VCA provisions. Id. at 35-36.

41. In addition to the VCA, DCHA must comply with the terms of a Consent Order entered on March 27, 2002 in U.S. District Court for the District of Columbia in the class action lawsuit Young, et al. v. DC Housing Authority, et al., Civ. Action No. 01-650. This Order mandates the renovation and construction of 565 fully wheelchair accessible public housing units by December 31, 2007. Under a

Memorandum Order dated August 8, 2006 setting forth interim relief measures,

Judge Robertson determined that public housing tenants in need of transfers to

accessible units "must look outside the consent order to enforce any right they

have to a UFAS transfer." Order dated August 8, 2006 at 13.

42. VCA also provides that:

> The Private Owners and/or Private Management Agents (POMAs) who act on
> behalf of the DCHA are agents of the DCHA. Therefore, the DCHA is
> responsible for ongoing oversight of all POMA activities to ensure
> compliance with the terms of this Amended Voluntary Compliance
> Agreement, Section 504, Title II of the ADA and the Fair Housing Act and the
> DCHA is liable for the failure of any POMA to comply with the terms of this
> Amended Agreement.

> VCA § N at p.6.

## VI.    DISTRICT OF COLUMBIA MANDATES GOVERNING DCHA'S OBLIGATIONS TO PUBLIC HOUSING RESIDENTS WITH MOBILITY DISABILITIES

### Disability-based Discrimination in Violation of the D.C. Human Rights Act

43. The D.C. Human Rights Act, D.C. Code § 2-1402.21, prohibits discrimination in

housing on the basis of disability as follows (in pertinent part):

> (2) It shall be unlawful to discriminate against any person in the terms, conditions,
> or privileges of sale or rental of a dwelling or in the provision of services or
> facilities in connection with the dwelling because of a disability of:
>> (A) That buyer or renter; or
>> (B) Any person residing in or intending to reside in that dwelling after it is
>> sold, rented or made available; or any person associated with that buyer or
>> renter.
> (3) For purposes of this subsection, "unlawful discrimination" includes:
> .../
>> (B) A refusal to make reasonable accommodations in rules, policies, practices,
>> or services, when these accommodations may be necessary to afford any
>> person equal opportunity to use and enjoy a dwelling[.]
> D.C. Code § 2-1402.21

General DCHA Policy Regarding Transfer of Public Housing Tenants
with Mobility Disabilities

44. D.C. Mun. Reg. tit. 14 § 6400.1 provides that it is the policy of the DCHA to
"transfer tenants from one dwelling unit to another to alleviate conditions of
hardship caused by physical conditions or to address changed family
circumstances." D.C. Mun. Regs. tit. 14 § 6400.1. Such transfers may be DCHA
or tenant initiated.

45. D.C. Mun. Reg. tit. 14 § 6400.2 allows DCHA to transfer public housing residents
to accommodate a disability.  D.C. Mun. Regs. tit. 14 § 6400.2.

Lease Compliant Tenant Households Are Deemed Qualified to Transfer

46. D.C. Mun. Reg. tit.14 §6402.3   provides that: a 'lease compliant tenant
household' is one who meets the following criteria: is "current on rent payments
and/or on any repayment agreement"; is "current on utility payments and/or on
any utility repayment agreement"; is "current with recertification process; has no
history of criminal activity or disturbances; is not subject to a citation for any
lease violation; has a good housekeeping record as evidenced by a housekeeping
inspection; and is not subject to a Notice-to-Quit or Cure." D.C. Mun. Reg. tit 14,
§ 6402.3.  DCHA denies requests for transfers by tenant households who are not
compliant with the terms of their leases.

Reasonable Accommodation Requests to Transfer

13

47. D.C. Mun. Regs. tit. 14 §§7403 and 7404 govern reasonable accommodation requests by public housing residents, including requests to transfer to wheelchair accessible units.[1]

48. DCHA must "approve or deny the reasonable accommodation request [...] as expeditiously as possible but [...] within sixty (60) working days of the receipt of the request." D.C. Mun. Regs. tit. 14 § 7404.6.

49. People with disabilities who live in public housing may request reasonable accommodations at any time. D.C. Mun. Regs. tit. 14 § 7403.1.

50. The regulations reflect specific examples of reasonable accommodations such as (e) "[t]ransferring a resident to a unit on a lower level or a unit that is completely on one level;" and (a) "[m]aking a unit, part of a unit or public and common use element accessible for the head of household or a household member with a disability that is on the lease." D.C. Mun. Regs. tit. 14 § 7403.3(a), (e).

DCHA-Initiated Emergency Medical Transfers

51. D.C. Mun. Regs. tit. 14 § 6401 governs mandatory transfers initiated by DCHA including emergency medical transfers. This provision allows DCHA to initiate transfers to relocate tenants to "alleviate certain housing conditions" including conditions:

> (a) ... that represent an emergency or a threat to life, health, or safety (e.g., fire, flood, no water), as determined by DCHA, another governmental entity or as a result of a judicial proceeding;
> .../ [and]

[1] D.C. Mun. Reg. tit.14 §7404.1 establishes the basis for disapproval or reasonable accommodation requests, including: "(a) [a] violation of District of Columbia or federal law; (b) [a] fundamental alteration in the nature of the DCHA public housing program; (c) [a]n undue financial and administrative burden on DCHA; (d) [a] structurally unfeasible alteration; or (e) [a]n alteration requiring the removal or alteration of a load-bearing structural member." None of these bases apply to Ms. Jones' accommodation requests.

(f) permit occupancy of a unit with accessible feature[s] by a transferring resident
    …/
(g) alleviate any other conditions of hardship as determined by DCHA or to effectuate DCHA goals and/or objectives.

D.C. Mun. Reg. tit.14 §6401.1

DCHA initiated transfers take precedence over new admissions and tenant requests to transfer. D.C. Mun. Reg. tit.14 §6401.6.

Tenant Admissions and Occupancy in Redeveloped Properties

52. D.C. Mun. Regs. tit. 14 § 6113 governs tenant admissions and occupancy in "redeveloped properties" such as Henson Ridge. These properties are "private entities which communities are created through Hope VI or other public funding combined with private financing, which have some or all of their units assisted by operating funds provided by DCHA." D.C. Mun. Reg. tit.14 §6113.1.

53. D.C. Mun. Regs. tit. 14 § 6113.3(a) requires the incorporation of criteria for residents at redeveloped properties into regulatory and occupancy agreements by and between the property owners and DCHA after consultation with community representatives including DCHA officials.

54. D.C. Mun. Regs. tit. 14 § 6113.3(c) states that for UFAS accessible units, "besides the General Selection Criteria, occupancy of the Units shall be to a household qualified for the available bedroom size of the Unit and a verified need for the features of a UFAS-Accessible Unit…" D.C. Mun. Regs. tit. 14 § 6113.3(c).   The regulations also make clear that "qualified DCHA residents on DCHA's transfer list" are eligible to lease the units in redeveloped properties such as Henson Ridge. Id. at ( c)(4).   Each property (such as Henson Ridge) must

15

develop application procedures that are subject to review and approval by DCHA in accordance with the General Selection Criteria developed. D.C. Mun. Reg. tit. 14 § 6113.4.

55. On information and belief, the General Selection Criteria for Henson Ridge, developed in conjunction with DCHA, states that applicants will generally be accepted with a credit rating of 0, 1, 2 or 3. Credit ratings above 3, "excluding medical, that are dated within three years will be cause for rejection."

Notice/Grievance/Appeals Process

56. DC Mun. Reg. tit.14 §6107.3 requires DCHA to send a notice to public housing applicants who are deemed ineligible that contains "(c) [t]he reason for the determination of ineligibility;" "(d) [t]he applicant's right to bring new or additional information to the informal conference;" and "(e) [t]he type of additional documentation or information DCHA may need in order to reconsider an applicant's eligibility for the public housing ... program[]," among other information. D.C. Mun. Reg. tit. 14 §6107.3.

57. DCHA's grievance procedures state that "[a]ny tenant of or applicant for [DCHA] housing who believes that he or she is aggrieved, or adversely affected by an act or failure to act by the [DCHA] official, may file ...a complaint with the [DCHA] requesting an administrative determination of his or her rights." D.C. Mun. Reg. tit. 14 § 6301.1. The complaint must be filed not later than one year after the DCHA act or failure to act that constitutes the basis for the grievance." D.C. Mun. Reg. tit. 14 § 6301.3.

## VII.   CLAIMS

**Count I** - **Discriminatory exclusion from public housing based on Plaintiff's disability in violation of Section 504**

58.  Paragraphs 1-42 are repeated and realleged for the purpose of stating this claim.

59.  Plaintiff Franchett Jones is a qualified individual with a disability as defined by Section 504 of the Rehabilitation Act.  As a lease-compliant public housing tenant, she is entitled to a transfer to a wheelchair accessible public housing unit as a reasonable accommodation to her mobility disabilities.  Due to Defendants' discriminatory conduct, Plaintiff has been, and continues to be, humiliated, suffering from emotional distress and harm by her exclusion from participation in, and denied equal access to the benefits of basic features such as the bathrooms, bedrooms, and kitchen facilities of public housing in the District of Columbia based on her disability, in violation of Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794(a), and related federal regulations, 24 C.F.R. pt. 8; 24 C.F.R. pt 40. & App. A.

**Count II-** **Discriminatory Denial of Plaintiff's Reasonable Accommodations under the Fair Housing Act Amendments**

60.  Paragraphs 1- 42 are repeated and realleged for the purpose of stating this claim. Despite her requests to transfer dating back to November 2005, Defendants have denied Plaintiff Franchett Jones a transfer to a wheelchair accessible public housing unit, and a waiver of the credit review to effectuate her transfer within the public housing system as a reasonable accommodation to her mobility disabilities, in violation of the Fair Housing Act Amendments, 42 U.S.C. §§3601-3604; 24 C.F.R. §100.204.   Consequently, Plaintiff has been, and continues to be,

17

humiliated, suffering from emotional distress and harmed by Defendants' discriminatory conduct.

**Count III** – **Discriminatory Exclusion from Public Housing based on Disability in violation of the DC Human Rights Act**

61. Plaintiff reasserts and realleges paragraphs 1-57 above for the purpose of stating this claim. Due to Defendants' discriminatory conduct, Plaintiff has been, and continues to be humiliated, suffers emotional distress, and harmed by her exclusion from participation in, and denied equal access to the benefits of basic features such as the bathrooms, bedrooms, and kitchen facilities of public housing in the District of Columbia based on her disability, in violation of the DC Human Rights Act, D.C. Code § 2-1402.21.

**Count IV** – **Failure to Transfer Plaintiff to an Accessible Unit as a Reasonable Accommodation in violation of DCMR tit.14 §§ 7403 and 7404**

62. Paragraphs 1- 57 are repeated and realleged for the purpose of stating this claim.

63. Defendants' failure to process Plaintiff Franchett Jones' request to transfer to an accessible unit as a reasonable accommodation to her mobility disabilities within 60 days of her request in November 2005 in violation of D.C. Mun. Reg. tit. 14 §7404.6, has caused, and continues to cause Ms. Jones humiliation, emotional distress and harm as a result of Defendants' discriminatory conduct.

64. Defendants' failure to transfer Ms. Jones to an accessible unit as a reasonable accommodation to her mobility disabilities in violation of D.C. Mun. Regs. tit. 14 § 7403.3(a) and (e) has caused, and continues to cause, Ms. Jones harm.

**Count V-** **Failure to Transfer Plaintiff on an Emergency Medical Basis in Violation of DCMR tit.14 § 6401.**

65. Paragraphs 1-57 are repeated and realleged for the purpose of stating this claim.

66. Plaintiff Franchette Jones has suffered, and continues to suffer, harm from the Defendants' failure to transfer her on an emergency basis to a wheelchair accessible public housing unit to alleviate the conditions of hardship, and threats to her life, health, or safety in her inaccessible unit without safe entry or egress, or access to the bathroom or bedrooms or kitchen facilities, in violation of D.C. Mun. Reg. tit. 14 § 6401.

67. In addition, Defendants' failure to transfer Ms. Jones to an accessible public housing unit to effectuate DCHA's goals of creating accessible units and ensuring occupancy by public housing tenants who need the accessible features, violates D.C. Mun. Reg. tit. 14 § 6401. As a result, Plaintiff has been, and continues to be, humiliated, suffering from emotional distress and harmed due to her lack of access to the entrance to her unit and the bathroom and bedrooms of her DCHA unit.

**Count VI-** **Failure to Ensure the Application of Established Tenant Selection Criteria for Assignment to UFAS Units at Henson Ridge's selection in Violation of D.C. Munic. tit.14 Reg. § 6113**

68. Paragraphs 1- 57 are repeated and realleged for the purpose of stating this claim.

69. Defendants' failure to ensure that the criteria and selection process for assignment of UFAS units at Henson Ridge complied with § 504 of the Rehabilitation Act subjected Plaintiff to humiliation, emotional distress and harm in violation of D.C. Mun. Reg. tit. 14 § 6113.

**Count VII-** **Failure to Afford Plaintiff Due Process in violation of D.C. Mun. Regs. tit.14 §§ 6107 and 6301**

70. Paragraphs 1- 57 are repeated and realleged for the purpose of stating this claim.

71. By providing a defective notice that failed to adequately specify the reasons for denying Plaintiff Franchett Jones an accessible unit at Henson Ridge, and by failing to afford adequate time to appeal the rejection, Defendants deprived Ms. Jones of due process in violation of D.C. Mun. Regs. tit. 14 §§ 6107 and 6301. Consequently, Ms. Jones has suffered, and continues to suffer humiliation, emotional distress and harm.

## VIII.  RELIEF SOUGHT

72. To remedy Defendants' federal statutory and regulatory violations, Plaintiff respectfully requests that the Court:

   A.  Exercise jurisdiction over this matter.

   B.  Issue a declaration and order that Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and the federal regulations promulgated thereunder, 24 C.F.R. pt. 8; 24 C.F.R. pt. 40 & App. A; and FHAA, 42 U.S.C. §§ 3601-3604, 24 C.F.R. §100.204, D.C. Code §2-1402.21, and D.C. Mun. Regs. tit.14 §§6113, 6301, 6401, 7403, and 7404.

   C.  Issue a preliminary and permanent injunctive relief to enjoin Defendants to assure their compliance with Section 504, 29 U.S.C. § 794, 24 C.F.R. pt. 8; FHAA, 42 U.S.C. §§ 3601-3604, 24 C.F.R. §100.204, D.C. Code § 2-1402.21, and D.C. Mun. Regs., tit.14 §§6113, 6301, 6401, 7403, and 7404.

   D.  Grant Plaintiff an immediate transfer to a four-bedroom wheelchair-accessible public housing unit at Henson Ridge. If a four bedroom accessible unit is not available immediately due to occupancy by a public

housing family who needs the accessible features of the unit, transfer Plaintiff to a four bedroom accessible unit at another property. If a four-bedroom wheelchair-accessible unit is not immediately available in the public housing system, transfer Plaintiff to a three-bedroom wheelchair accessible unit as an interim measure.

E.  Issue an order mandating that Defendants finance the aforementioned transfer, i.e., pay for Plaintiff's moving expenses.

F.  Issue an order granting Plaintiff reasonable attorneys' fees and costs in accordance with 29 U.S.C. § 794 (a), 42 U.S.C. §3613, D.C. Code § 2-1403.

G.  Issue an order directing Defendants to pay compensatory damages in the amount of $30,000 to Plaintiff Franchett Jones.

H.  Grant Plaintiff additional relief as this Court may deem appropriate.

Respectfully submitted,

Marjorie Rifkin, DC Bar # 437076
University Legal Services- P&A
220 I Street, NW #202
Washington, DC 20002
(202) 547-0198 ext. 128
(202) 547-2662 (fax)

Dated: November 1, 2007

21

# EXHIBIT B

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CO-932
Rev. 4/96

NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

**NOTICE TO PARTIES:**

Pursuant to Rule 40.5(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk's records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

**NOTICE TO DEFENDANT:**

Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

**NOTICE TO ALL COUNSEL**

Rule 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff, defendant or counsel must complete the following:

I.    RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

A new case is deemed related to a case pending in this or another U.S. Court if the new case:  [Check appropriate box(es) below.]

[ ]    (a)    relates to common property

[X]    (b)    involves common issues of fact

[ ]    (c)    grows out of the same event or transaction

[ ]    (d)    involves the validity or infringement of the same patent

[ ]    (e)    is filed by the same pro se litigant

2.    RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)

A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the same parties and same subject matter.

Check box if new case is related to a dismissed case:  [ ]

3.    NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

_____

4.    CAPTION AND CASE NUMBER OF RELATED CASE(ES).  IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

Young, et al.                                    v. District of Columbia Housing    C.A. No. 01-cv-00650
                                                      Authority, et al.

11/30/07                          _____
DATE                               Signature of Plaintiff/Defendant (or counsel)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)**

| | | |
|---|---|---|
| **FRANCHETT JONES,** | : | |
|     *Plaintiff,* | : | |
| | : | |
| **v.** | : | (On Removal from the |
| | : | Superior Court of the |
| **DISTRICT OF COLUMBIA HOUSING** | : | District of Columbia; |
| **AUTHORITY,** | : | Case No. 2007 CA 007324B) |
| | : | |
| **and** | : | |
| | : | |
| **MICHAEL KELLY, EXECUTIVE** | : | |
| **DIRECTOR, DISTRICT OF COLUMBIA** | : | |
| **HOUSING AUTHORITY,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **LORRY BONDS, ADA/504 COORDINATOR,** | : | |
| **DISTRICT OF COLUMBIA HOUSING** | : | |
| **AUTHORITY,** | : | |
| | : | |
|     *Defendants.* | : | |

## SUPPLEMENTAL STATEMENT
## OF NOTICE OF DESIGNATION OF A RELATED CIVIL CASE

IN SUPPORT of its Notice of Designation of Related Civil Case, and requested assignment to the Honorable James Robertson, Defendants District of Columbia Housing Authority, Michael Kelly, and Lorry Bonds (hereinafter collectively referred to as "Defendants"), through the undersigned counsel, hereby submit the instant Supplemental Statement of Notice of Related Civil Case, and in support thereof state as follows:

## BACKGROUND

Franchett Jones alleges that she is a public housing resident who is mobility impaired and in need of a reasonable accommodation that would permit her to use the bathroom and bedroom facilities of her residence. She further asserts that she requested a reasonable accommodation; was approved for a reasonable accommodation and, as part of the reasonable accommodation process she was interviewed at Henson Ridge for a unit suitable for a mobility-impaired person, (*i.e.,* constructed according to the Uniform Federal Accessibility Standards (UFAS)); that Henson Ridge is a privately developed, owned and managed property that DCHA has financed, in part, to satisfy its obligation under *Young, et al. v. DCHA, et al.*[1] to produce Apartment Units for mobility impaired [UFAS units] for public housing residents and applicants, and subsequent to the interview she was denied an apartment at Henson Ridge because she did not meet the admission criteria of Henson Ridge and unspecified DCHA criteria . *See* Complaint at ¶¶ 8-23.

Ms. Jones asserts that by these and other actions DCHA has violated § 504 of the 1973 Rehabilitation Act, 29 U.S.C. §794(a), and related federal regulations 24 C.F.R. pt. 8, 24 C.F.R. pt. 40 & App. A.; the Fair Housing Act Amendments; DCHA's Voluntary Compliance Agreements with the United States Department of Housing and Urban Development; as well as the District of Columbia Human Rights Act and various District of Columbia Municipal Regulations issued by DCHA. *See* Complaint at ¶¶ 58-71. Ms. Jones, because of her residence in public housing, mobility-impairment and need for a reasonable accommodation to be able to participate in the public housing program

---

[1]    *Young, et al. v. District of Columbia Housing Authority, et al.,* (In the United States District Court for the District of Columbia ) Case No. 01-cv-00650 (hereinafter referred to as "*Young*" or the "*Young* case").

equally and fully in the same manner as non-disabled persons, is a member of the class of present and future mobility-impaired persons within the ambit of the Honorable Judge James Robertson's March 27, 2002 Consent Order in *Young*.

In *Young*, a class action on behalf of mobility-impaired public housing residents, the class members brought suit alleging they were denied accessibility to public housing in the District of Columbia due to discriminatory practices in violation of Section 504 of the Rehabilitation Act of 1973 and 24 C.F.R. pt. 8 and 24 C.F.R. pt. 40 & App. A.  On March 27, 2002, the court in *Young* entered a Consent Order to resolve the litigation.  A summary of pertinent parts of the Order relevant to this Supplemental Statement is that:

a. The United States District Court would retain jurisdiction to enforce and modify the Consent Order;

b. The purpose of the Consent Order was to assure that "class members [would be provided] with the opportunity to participate fully and equally" with non-Disabled Persons in the public housing program.

c. DCHA was to provide 565 public housing units of various sizes (0s – 6s) to be constructed in accordance with the Uniform Federal Accessibility Standards (UFAS) and completed in accordance with an agreed upon schedule.

d. The Consent Order neither "increased nor reduced the rights of Disabled Persons or duties of DCHA" under Section 504 (or its implementing regulations at 24 C.F.R. part 8) regarding the provision of Reasonable Accommodations in public housing.  Further, DCHA would provide reasonable accommodations to applicants with mobility impairments once the person reached the top of the public housing waiting list by modifying an appropriate sized type of unit in accordance with an agreed upon order of priority, based on availability.

ARGUMENT IN SUPPORT OF
<u>ASSIGNMENT OF THIS CASE TO JUDGE ROBERTSON</u>

Judge Robertson has re-opened *Young* to examine the Defendants' compliance with the Consent Order. The motion to re-open proceedings was filed by University Legal Services, class counsel and designated counsel for all present and future mobility-impaired residents of public housing; the same counsel for Ms. Jones in the instant matter.

The *Jones* action touches upon the reason for the *Young* Consent Order – that is, the directive to **produce** UFAS Units for mobility-impaired residents and applicants, and **provide** housing units constructed in accordance with UFAS for the mobility-impaired. Thus, the *Jones* action axiomatically involves common issues of fact with *Young* currently pending before Judge Robertson.

Assignment to Judge Robertson will promote judicial economy inasmuch as he is already familiar with the Defendants, their operations, the issues involved with the Voluntary Compliance Agreements issued by HUD, as well as the many related issues of law that arise under the statutes Plaintiff claims are at issue in the case at bar. As such, Defendants submit that the interests of efficiency and judicial economy warrant that this matter be assigned to Judge Robertson's court. *See e.g., Tripp v. Executive Office of the President, et al.*, 194 F.R.D. 340, 342 (D.D.C. 2000) ("Judicial economy is, in part, the policy underlying the 'related case' rule.") (*citing Alberti v. General Motors Corp.*, 600 F. Supp. 1024, 1025 n.3 (D.D.C. 1984)).

In *Tripp*, an individual plaintiff alleged several claims against the same defendants as those alleged by a class of individuals in another pending matter. Those claims were based on nearly identical allegations of misconduct, and, as such, involved

"common issues of fact" under Local Civil Rule 40.5(a)(3).[2]  Unlike the plaintiffs in *Jones* and *Young*, the court approved this designation despite the fact that the plaintiff in *Tripp*, a then current U.S. government employee, was not similarly situated to the class of individuals in the related case, all *former* U.S. government employees.  The court's approval of a related case designation under such similar circumstances compels this Court to likewise designate *Jones* as related to *Young*.

Judge Robertson's continuing jurisdiction to enforce and modify the Consent Order in *Young* will clearly provide the Court with the necessary familiarity with the complex issues and extensive history of DCHA, its funding agency, HUD, the Court's prior enforcement efforts, as well as familiarity with Counsels to Plaintiff and Defendants respectively.  As such, Judge Robertson's unique expertise may "enhance the likelihood of a speedy and inexpensive determination" of *Jones* without necessarily diminishing the prospects of a just one.  *See Alberti v. General Motors Corp., supra*, 600 F.Supp. at 1025.

CONCLUSION

WHEREFORE, the forgoing premises considered, Defendants respectfully request the approval of its Notice of Designation of a Related Civil Case.

[SIGNATURE PAGE FOLLOWS]

---

[2]  LCvR 40.5(a)(3), in relevant part, provides that "cases are deemed related when the earliest is still pending on the merits in the District Court and they . . . (ii) involve common issues of fact . . ."

Respectfully submitted,

**DOUGLAS & BOYKIN** PLLC

Frederick A. Douglas (Bar No. 197897)
Curtis A. Boykin (Bar No. 444120)
Margaret McFarland (Bar No. 351072)
Robert Dillard (Bar No. 492948)
1850 M Street, NW – Suite 640
Washington, DC 20036
(202) 776-0370, telephone
(202) 776-0975 fax
*Counsel for Defendants*

November 30, 2007

# EXHIBIT C

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **FRANCHETT JONES**     : | |
|      *Plaintiff,*     : | |
|      : | **Civil Action No.:** |
| **v.**     : | **2007 CA007324 B** |
|      : | **Judge Geoffrey M. Alprin** |
| **DISTRICT OF COLUMBIA HOUSING**     : | |
| **AUTHORITY,**     : | |
|      : | |
| **and**     : | |
|      : | |
| **MICHAEL KELLY, EXECUTIVE**     : | |
| **DIRECTOR, DISTRICT OF COLUMBIA**     : | |
| **HOUSING AUTHORITY,**     : | |
|      : | |
| **and**     : | |
|      : | |
| **LORRY BONDS, ADA/504 COORDINATOR,**     : | |
| **DISTRICT OF COLUMBIA HOUSING**     : | |
| **AUTHORITY**     : | |
|      : | |
|      *Defendants.*     : | |

## <u>NOTICE OF REMOVAL</u>

Defendants, District of Columbia Housing Authority, Michael Kelly, and Lorry

Bonds, hereby give notice pursuant to 28 U.S.C. §1441 and 28 U.S.C. §1446, that they

are hereby removing the action entitled <u>Franchett Jones v. District of Columbia Housing

Authority, et al.,</u> in the Superior Court of the District of Columbia, Case Number 2007

CA 007324 B from the Superior Court of the District of Columbia to the United States

District Court of the District of Columbia.  This Notice of Removal will effect removal to

the United States District Court for the District of Columbia and this court shall proceed

no further unless and until the matter is remanded. *See* 28 U.S.C. § 1446(d).

Respectfully submitted,
**DOUGLAS & BOYKIN, PLLC**

Frederick A. Douglas, Esq. Bar No. 197897
Curtis A. Boykin, Esq. Bar No. 444120
Margaret McFarland, Esq. Bar No. 351072
Robert Dillard, Esq. Bar No. 492948
Douglas & Boykin PLLC
1850 M Street, NW Suite 640
Washington, D.C.  20036
(202) 776-0370
(202) 776-0975 fax
*Counsel for Defendants*

Date:   November 30, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent, via electronic service and

first class mail, postage prepaid, this 30th day of November, 2007, to:

Marjorie Rifkin, Esq.
University Legal Services-P&A
220 I Street, NW #202
Washington, DC 20002
*Counsel for Plaintiff*

Robert L. Dillard



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

FRANCHETT F JONES
    Vs.
                                     C.A. No.     2007 CA 007324 B
DISTRICT OF COLUMBIA HOUSING AUTHORITY

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge GEOFFREY M ALPRIN
Date:  November 1, 2007
Initial Conference: 9:00 am, Friday, February 01, 2008
Location:  Courtroom 320
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Francheil Jones

*Plaintiff*

vs.

District of Columbia Housing Authority

*Defendant*

Civil Action No. _____

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below.   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Name of Plaintiff's Attorney

University Legal Services

Address

By _____

Deputy Clerk

Telephone

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

Frangbett Jones                          *Plaintiff*

vs.                                                    Civil Action No. _____

District of Columbia Housing Authority

*Defendant*

## SUMMONS

To the above named Defendant: Larry Bonds

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Maxine Bland Bar #437076
Name of Plaintiff's Attorney

University Legal Services                By _____
Address                                           Deputy Clerk

202-547-0198 x 128
Telephone                                      Date _____

*Clerk of the Court*

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
**500 Indiana Avenue, N.W., Room JM-170**
**Washington, D.C. 20001  Telephone: 879-1133**

Franchett Jones

_Plaintiff_                                    C00732 -07

vs.                                    Civil Action No. _____

District Of Columbia Housing Authority
_Defendant_

### SUMMONS

To the above named Defendant: Michael Kelly

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below.    If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Clerk of the Court_

Marjorie Rifkin Bar #457076
Name of Plaintiff's Attorney

University Legal Services                By _____
Address                                         Deputy Clerk

220 I St. NE #130, Wash DC 2002

202-547-0198 ext. 128              Date _____
Telephone

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IN THE SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

---

**FRANCHETT JONES,**
2450 Elvans Road, SE, Washington, DC 20020

                                             Plaintiff,

v.                                                              CIVIL ACTION

**DISTRICT OF COLUMBIA HOUSING AUTHORITY,**
1133 N. Capitol St. NE, Washington, DC 20002

and

**MICHAEL KELLY, EXECUTIVE DIRECTOR**
**DISTRICT OF COLUMBIA HOUSING AUTHORITY,**
1133 N. Capitol St. NE, Washington, DC 20002

and

**LORRY BONDS, ADA/504 COORDINATOR,**
**DISTRICT OF COLUMBIA HOUSING AUTHORITY,**
1133 N. Capitol St NE, Washington, DC  20002

                                             Defendants.

RECEIVED
CIVIL CLERK'S OFFICE
NOV - 1 2007
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

---

## COMPLAINT

### I.    INTRODUCTION

1.  Plaintiff Franchett Jones is a 34-year-old woman with mobility disabilities who currently lives in an inaccessible public housing unit that is under the District of Columbia Housing Authority ["DCHA"].  Despite her requests dating back to November 2005, Defendant DCHA has denied Ms. Jones access to a wheelchair-accessible public housing unit, in violation of  Section 504 of the 1973 Rehabilitation Act,  29 U.S.C. § 794 et seq. ("Section 504"), the Fair Housing Act

Amendments, 42 U.S.C. §§ 3601-3604, the D.C. Human Rights Act, D.C. Code §2-1401.01 et seq., and D.C. Municipal Regulations, title 14, §§ 6113, 6400, 7403, and 7404.

## II.    JURISDICTION

2.  This Court has jurisdiction of this matter under Title 6 D.C. Code § 11-921.

## III.    PARTIES

A.  Plaintiff

3.  Plaintiff Franchett Jones is a resident of Washington, D.C. where she lives with her four children.

4.  Ms. Jones is an individual with a disability as defined in Section 504 and the Fair Housing Act Amendments because she has severe rheumatoid arthritis which substantially impairs her major life activity of walking, as well as manual tasks. Ms. Jones uses a motorized wheelchair for ambulation.

B.  Defendants

5.  Defendant District of Columbia Housing Authority ("DCHA") is an "instrumentality of District government" that receives federal funds to plan, develop, and operate the system of public and subsidized housing in the District. DCHA is a recipient of federal funds as defined by Section 504, 29 U.S.C. § 794(a).

6.  Defendant Michael P. Kelly is the Executive Director of DCHA. Mr. Kelly is named in his official capacity, under which he is required to "[a]dminister, manage, and direct the affairs" of DCHA, which includes the development of all

aspects of the operations of the public housing system pursuant to Title 5 D.C. Code § 5-125.

7. Defendant Lorry Bonds is the Section 504/ADA Coordinator of DCHA. As such, she is responsible for DCHA's compliance with the regulations promulgated by HUD under Section 504, the Fair Housing Act, with the District of Columbia's relevant statutes and regulations that prohibit disability-based discrimination in public housing. Ms. Bonds is named in her official capacity. Ms. Bonds processes requests from public housing tenants with mobility disabilities seeking transfers to accessible units as a reasonable accommodation. Title 13 DCMR §§6401.4, 7404; Amended Voluntary Compliance Agreement dated May 1, 2006 at § E.2.a.iii, at p.19 ("transfers of residents with disabilities and placement of applicants with disabilities requiring UFAS-Accessible units will be centrally coordinated through DCHA's Section 504/ADA Coordinator's Office.").

## IV.    FACTS

8. Plaintiff Franchett Jones lives in an inaccessible two-story, three-bedroom public housing unit at 2450 Elvans Road SE, which is owned and operated by DCHA. She has lived at this address since approximately December 2003. Ms. Jones has four children who live with her: a 16-year-old daughter, a 13-year-old son, a 7-year-old daughter, and 5-year-old daughter.

9. Franchett Jones is compliant with all her DCHA lease provisions: she pays her rent and utility payments in a timely manner, and she has never engaged in criminal activity or disturbances.

3

10. Ms. Jones has severe rheumatoid arthritis and uses a wheelchair for mobility. In order to enter or exit her home, which is essential for her to attend her medical appointments, among other reasons, Ms. Jones must be carried up and down four steps, creating a considerable threat to her health and safety. In May 2007, Ms. Jones sustained minor injuries when her daughter and home health care aide attempted to lift her over the stairs while she is in her manual wheelchair.

11. Because her motorized wheelchair is too large and too heavy to maneuver and be lifted up and down the steps, Ms. Jones is forced to rely on a manual wheelchair which she cannot operate independently. This vastly limits her mobility.

12. Once inside of her home, Ms. Jones has access only to the first floor consisting of the living room and the kitchen. Fourteen steps separate her from the second floor of her home, consisting of her children's bedrooms and the only bathroom in the house. Due to her mobility disabilities, Ms. Jones – unlike able-bodied tenants of public housing -- cannot access the bedrooms or the only bathroom in the house because they are located on the second floor. Consequently, Ms. Jones is forced to live in the living room of the home where she is relegated to using a portable toilet and adult diapers. She must rely on sponge baths because she cannot access the bathtub or shower on the second floor of her home.

13. In addition to her inability to walk, Ms. Jones has limited manual dexterity. Consequently, Ms. Jones cannot independently handle such routine tasks as opening and closing the doors, reaching and operating appliances, plumbing fixtures, and light switches, among others.

14. Beginning in 2003, Ms. Jones requested reasonable accommodations based on her disabilities and presented to DCHA orders from her physicians stating that she has orthopedic disabilities and requires a unit with grab bars in the bathrooms, and no steps, in order to prevent injuries at her home. DCHA did not respond to these physician orders.

15. On November 2, 2005, Ms. Jones submitted to her DCHA property manager another request for a transfer to an accessible, four-bedroom public housing unit. Ms. Jones' physician again provided to DCHA all the necessary information to support Ms. Jones' transfer request.

16. Ms. Jones attempted to follow up her transfer request by communicating with Defendant Lorry Bonds at DCHA, who acknowledged receipt of Ms. Jones' Request for a Reasonable Accommodation dated November 2, 2005.

17. Beginning in November 2006, Ms. Jones was hospitalized for medical treatment. She was subsequently hospitalized, often for weeks at a time, again in December 2006 and February 2007. When she was discharged to her home in late February 2007, Ms. Jones again inquired about her prior requests to transfer to an accessible public housing unit.

18. On March 29, 2007, Ms. Jones' primary care physician Dr. Flory, provided additional medical information to Defendant Lorry Bonds on DCHA's designated form indicating that Ms. Jones is permanently disabled, uses a wheelchair upon which she depends, and needs a fully accessible unit with accessible outlets, lowered thermostat controls, accessible kitchen cabinets and sinks, bathroom

cabinets, bathtub/shower seats, toilets, and bathroom grab bars, among other accessible features.

19. On April 3, 2007, 17 months following Ms. Jones' submission of her transfer request, Defendant Lorry Bonds approved Ms. Jones' request for a four bedroom fully accessible dwelling unit.

20. In June 2007, DCHA acted on Ms. Jones' transfer request by referring Ms. Jones' name to Henson Ridge, which manages accessible public housing units under a contract with DCHA.  On information and belief, DCHA refers eligible public housing tenants in need of accessible housing to Henson Ridge to occupy the accessible public housing units at that development.

21. On June 28, 2007, Mi'esha Watson, Assistant Community Manager of Henson Ridge, sent a letter to Ms. Jones inviting Ms. Jones to contact the office regarding a unit there.

22. Ms. Jones met Ms. Watson at Henson Ridge where she completed the rental application, and provided her identification card.  Ms. Watson performed a credit check during Ms. Jones' visit and informed Ms. Jones that she did not fit the criteria of Level 3 or lower.  When Ms. Jones questioned why her public housing transfer request through DCHA was being reviewed according to criteria for new applicants, Ms. Watson referred Ms. Jones back to Defendant Lorry Bonds at DCHA.

23. On July 11, 2007, Henson Ridge mailed a notification letter to Ms. Jones stating that she was rejected for occupancy there.  The notice stated that Ms. Jones: Household failed to meet the Property's Screening Criteria specifically:

> Your credit report did not meet our screening criteria**
> [and] Other: Did not meet DC Housing Criteria.
> **Your consumer credit information was obtained from
> <u>EQUIFAX</u>. The credit bureau only collect[sic] and mange
> consumer credit information and do does[sic] not make
> credit decisions. Therefore, they will be unable to provide
> specific reasons why your residence has not been
> approved."

24. Henson Ridge's July 11, 2007 notice provided that: "If you disagree with this determination you have 14 days to respond in writing to this notice, or to request a meeting to discuss the rejection. If you desire such an informal meeting, we must hear from you by 14 days from the date of this letter. If we do not hear from you by the close of business on the 14th day, this denial shall be considered final." On information and belief, Ms. Jones sought to resolve the status of her transfer request by contacting Lorry Bonds, rather than appealing to Henson Ridge.

25. Ms. Jones repeatedly contacted Defendant Lorry Bonds to question the reasons for the denial of her transfer to an accessible unit at Henson Ridge. On information and belief, Ms. Bonds never explained which "DC Housing Criteria" Ms. Jones failed to meet in order to transfer to an accessible unit at Henson Ridge.

26. The notice from Henson Ridge provided that Ms. Jones' consumer credit information was obtained from Equifax, and that Ms. Jones could obtain a free copy of her credit information within sixty days of July 11, 2007, and that Ms. Jones had a right to dispute the accuracy or completeness of any information within her consumer credit report.

27. Ms. Jones was hospitalized for medical treatment on several occasions again in June 2007 and in October 2007.

28. As a result of DCHA's failure to transfer Ms. Jones to an accessible public housing unit, Ms. Jones has missed approximately 20 medical appointments in the past ten months. On information and belief, Ms. Jones has suffered a deterioration of her physical condition and emotional stress and humiliation from her confinement to the first floor of her home.

29. On September 12, 2007, Plaintiff's Counsel Marjorie Rifkin faxed a letter to Defendant Lorry Bonds seeking a transfer for Ms. Jones and her family to a fully accessible unit, and "a written denial stating the reason(s) for her rejection with a copy of the credit report at issue" by September 19, 2007. Plaintiff's Counsel resent the letter to Ms. Bonds on September 20, 2007 with a cover letter again seeking DCHA's response. DCHA failed to respond.

30. On October 2, 2007, Plaintiff's Counsel emailed Defendant Lorry Bonds and DCHA Acting General Counsel Hans Froelicher advising them that University Legal Services was drafting a Complaint on behalf of Ms. Jones "to effectuate her transfer request to an accessible 4 bedroom apartment at Henson Ridge." Upon request, Plaintiff's Counsel then resent for the second time the September 12, 2007 letter that had originally been faxed to Ms. Bonds. Plaintiff's Counsel left a voicemail message for Defendants' Counsel Hans Froelicher on October 23, 2007, and emailed him on October 25, 2007 to seek a resolution and to advise him again that Plaintiff is drafting her Complaint. To date, DCHA has failed to respond to Plaintiff's correspondence.

## V.    FEDERAL MANDATES GOVERNING DCHA'S OBLIGATIONS TO PUBLIC HOUSING RESIDENTS WITH MOBILITY DISABILITIES

Section 504

31. Section 504 of the 1973 Rehabilitation Act prohibits recipients of federal funds from discriminating against people with disabilities. Section 504 provides:

> No otherwise qualified individual with a disability in the United States… shall, solely by reason of her disability of his disability, be excluded from the participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C.A. § 794 (a)

This prohibition applies to Federal financial recipients such as DCHA regardless of whether they are acting "directly or indirectly through contractual, licensing, or other arrangements." 24 C.F.R. § 8.4(b)(1).

32. Congress directed the Attorney General and all agency heads to promulgate regulations to carry out the statute. 29 U.S.C. § 794 (a). The U.S. Department of Housing and Urban Development ("HUD") accordingly promulgated implementing regulations in 1988 which specifically apply to public housing authorities including the District of Columbia Housing Authority. 24 C.F.R. pt. 8.

33. The HUD regulations require DCHA to build or renovate at least 5% of the public housing units to make them wheelchair accessible. 24 C.F.R. § 8.22(a), (b). The regulations further require that DCHA maximize occupancy of the accessible units by people with mobility disabilities who need the accessible features of these units. 24 C.F.R. § 8.27.

34. The HUD regulations define accessibility to "mean[] that the facility or portion of the facility when designed, constructed or altered, can be approached, entered, and used by individuals with physical handicaps." 24 C.F.R. § 8.3.

35. The Uniform Federal Accessibility Standards ("UFAS") were developed to address this need. 24 C.F.R. pt 40 & App.A. HUD adopted these UFAS regulations and incorporated them into the implementing regulations as of July 11, 1988. 24 C.F.R. § 8.32.

36. Section 504 requires that public housing be "accessible to and usable by people with disabilities." 24 C.F.R. §§ 8.22(a), (b), 8.23(b), 8.20. Consequently, public housing authorities must provide reasonable accommodations to people with disabilities upon their request for, inter alia, transfers to accessible public housing units, modifications of public housing units to meet the needs of residents, and assistance in the application and certification process to obtain or maintain housing. 24 C.F.R. §§8.4(b)(i), 8.24, 8.33. Section 504 does not require that claimants exhaust administrative grievance procedures prior to seeking relief through the courts.

Fair Housing Act Amendments

37. The Fair Housing Act Amendments [FHAA], 42 U.S.C. §3604(f), provide:

[I]t shall be unlawful--.../

2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--

(A) that person; or
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available[.]

42 U.S.C. §3604(f).

The FHAA defines discrimination to include:

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(3)(B); see also 24 C.F.R. §100.204; Joint Statement of DOJ-HUD, "Reasonable Accommodations under the Fair Housing Act," May 2004 (available via internet at www.usdoj.gov.).

38. The FHAA does not require exhaustion of administrative grievance procedures prior to seeking relief through litigation.

Amended Voluntary Compliance Agreement dated May 1, 2006 between HUD and DCHA

39. On May 1, 2006, DCHA entered into an Amended Voluntary Compliance Agreement (VCA) with HUD to address ongoing violations of Section 504.

40. Among other provisions, the VCA requires "Priority placement for existing DCHA applicants and residents with disabilities in DCHA's Mixed Income/New Construction "MINC" Developments" including Henson Ridge. VCA §E. 2.b. at p.20.  The VCA also requires DCHA's Section 504/ADA Coordinator to review all policies and require the Private Owners and Management Agents ("POMAs") to adopt policies that conform to the VCA provisions. Id. at 35-36.

41. In addition to the VCA, DCHA must comply with the terms of a Consent Order entered on March 27, 2002 in U.S. District Court for the District of Columbia in the class action lawsuit Young, et al. v. DC Housing Authority, et al., Civ. Action No. 01-650.  This Order mandates the renovation and construction of 565 fully wheelchair accessible public housing units by December 31, 2007.  Under a

Memorandum Order dated August 8, 2006 setting forth interim relief measures,

Judge Robertson determined that public housing tenants in need of transfers to

accessible units "must look outside the consent order to enforce any right they

have to a UFAS transfer." Order dated August 8, 2006 at 13.

42. VCA also provides that:

> The Private Owners and/or Private Management Agents (POMAs) who act on behalf of the DCHA are agents of the DCHA. Therefore, the DCHA is responsible for ongoing oversight of all POMA activities to ensure compliance with the terms of this Amended Voluntary Compliance Agreement, Section 504, Title II of the ADA and the Fair Housing Act and the DCHA is liable for the failure of any POMA to comply with the terms of this Amended Agreement.

> VCA § N at p.6.

## VI.  DISTRICT OF COLUMBIA MANDATES GOVERNING DCHA'S OBLIGATIONS TO PUBLIC HOUSING RESIDENTS WITH MOBILITY DISABILITIES

### Disability-based Discrimination in Violation of the D.C. Human Rights Act

43. The D.C. Human Rights Act, D.C. Code § 2-1402.21, prohibits discrimination in

housing on the basis of disability as follows (in pertinent part):

> (2) It shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of:
>> (A) That buyer or renter; or
>> (B) Any person residing in or intending to reside in that dwelling after it is sold, rented or made available; or any person associated with that buyer or renter.
> (3) For purposes of this subsection, "unlawful discrimination" includes:
> .../
>> (B) A refusal to make reasonable accommodations in rules, policies, practices, or services, when these accommodations may be necessary to afford any person equal opportunity to use and enjoy a dwelling[.]
> D.C. Code § 2-1402.21

### General DCHA Policy Regarding Transfer of Public Housing Tenants with Mobility Disabilities

44. D.C. Mun. Reg. tit. 14 § 6400.1 provides that it is the policy of the DCHA to "transfer tenants from one dwelling unit to another to alleviate conditions of hardship caused by physical conditions or to address changed family circumstances." D.C. Mun. Regs. tit. 14 § 6400.1. Such transfers may be DCHA or tenant initiated.

45. D.C. Mun. Reg. tit. 14 § 6400.2 allows DCHA to transfer public housing residents to accommodate a disability. D.C. Mun. Regs. tit. 14 § 6400.2.

### Lease Compliant Tenant Households Are Deemed Qualified to Transfer

46. D.C. Mun. Reg. tit.14 §6402.3 provides that: a 'lease compliant tenant household' is one who meets the following criteria: is "current on rent payments and/or on any repayment agreement"; is "current on utility payments and/or on any utility repayment agreement"; is "current with recertification process; has no history of criminal activity or disturbances; is not subject to a citation for any lease violation; has a good housekeeping record as evidenced by a housekeeping inspection; and is not subject to a Notice-to-Quit or Cure." D.C. Mun. Reg. tit 14, § 6402.3. DCHA denies requests for transfers by tenant households who are not compliant with the terms of their leases.

### Reasonable Accommodation Requests to Transfer

13

47. D.C. Mun. Regs. tit. 14 §§7403 and 7404 govern reasonable accommodation requests by public housing residents, including requests to transfer to wheelchair accessible units.[1]

48. DCHA must "approve or deny the reasonable accommodation request [...] as expeditiously as possible but [...] within sixty (60) working days of the receipt of the request." D.C. Mun. Regs. tit. 14 § 7404.6.

49. People with disabilities who live in public housing may request reasonable accommodations at any time. D.C. Mun. Regs. tit. 14 § 7403.1.

50. The regulations reflect specific examples of reasonable accommodations such as (e) "[t]ransferring a resident to a unit on a lower level or a unit that is completely on one level;" and (a) "[m]aking a unit, part of a unit or public and common use element accessible for the head of household or a household member with a disability that is on the lease." D.C. Mun. Regs. tit. 14 § 7403.3(a), (e).

DCHA-Initiated Emergency Medical Transfers

51. D.C. Mun. Regs. tit. 14 § 6401 governs mandatory transfers initiated by DCHA including emergency medical transfers. This provision allows DCHA to initiate transfers to relocate tenants to "alleviate certain housing conditions" including conditions:

> (a) ... that represent an emergency or a threat to life, health, or safety (e.g., fire, flood, no water), as determined by DCHA, another governmental entity or as a result of a judicial proceeding;
> .../ [and]

---

[1] D.C. Mun. Reg. tit.14 §7404.1 establishes the basis for disapproval or reasonable accommodation requests, including: "(a) [a] violation of District of Columbia or federal law; (b) [a] fundamental alteration in the nature of the DCHA public housing program; (c) [a]n undue financial and administrative burden on DCHA; (d) [a] structurally unfeasible alteration; or (e) [a]n alteration requiring the removal or alteration of a load-bearing structural member." None of these bases apply to Ms. Jones' accommodation requests.

(f) permit occupancy of a unit with accessible feature[s] by a
transferring resident
.../

(g) alleviate any other conditions of hardship as determined
by DCHA or to effectuate DCHA goals and/or
objectives.

D.C. Mun. Reg. tit.14 §6401.1

DCHA initiated transfers take precedence over new admissions and tenant

requests to transfer. D.C. Mun. Reg. tit.14 §6401.6.

<u>Tenant Admissions and Occupancy in Redeveloped Properties</u>

52. D.C. Mun. Regs. tit. 14 § 6113 governs tenant admissions and occupancy in

"redeveloped properties" such as Henson Ridge. These properties are "private

entities which communities are created through Hope VI or other public funding

combined with private financing, which have some or all of their units assisted by

operating funds provided by DCHA." D.C. Mun. Reg. tit.14 §6113.1.

53. D.C. Mun. Regs. tit. 14 § 6113.3(a) requires the incorporation of criteria for

residents at redeveloped properties into regulatory and occupancy agreements by

and between the property owners and DCHA after consultation with community

representatives including DCHA officials.

54. D.C. Mun. Regs. tit. 14 § 6113.3(c) states that for UFAS accessible units,

"besides the General Selection Criteria, occupancy of the Units shall be to a

household qualified for the available bedroom size of the Unit and a verified need

for the features of a UFAS-Accessible Unit..." D.C. Mun. Regs. tit. 14 §

6113.3(c).   The regulations also make clear that "qualified DCHA residents on

DCHA's transfer list" are eligible to lease the units in redeveloped properties such

as Henson Ridge. <u>Id.</u> at ( c)(4).   Each property (such as Henson Ridge) must

develop application procedures that are subject to review and approval by DCHA in accordance with the General Selection Criteria developed.  D.C. Mun. Reg. tit. 14 § 6113.4.

55. On information and belief, the General Selection Criteria for Henson Ridge, developed in conjunction with DCHA, states that applicants will generally be accepted with a credit rating of 0, 1, 2 or 3.  Credit ratings above 3, "excluding medical, that are dated within three years will be cause for rejection."

Notice/Grievance/Appeals Process

56. DC Mun. Reg. tit.14 §6107.3 requires DCHA to send a notice to public housing applicants who are deemed ineligible that contains "(c) [t]he reason for the determination of ineligibility;" "(d) [t]he applicant's right to bring new or additional information to the informal conference;" and "(e) [t]he type of additional documentation or information DCHA may need in order to reconsider an applicant's eligibility for the public housing ... program[]," among other information. D.C. Mun. Reg. tit. 14 §6107.3.

57. DCHA's grievance procedures state that "[a]ny tenant of or applicant for [DCHA] housing who believes that he or she is aggrieved, or adversely affected by an act or failure to act by the [DCHA] official, may file ...a complaint with the [DCHA] requesting an administrative determination of his or her rights." D.C. Mun. Reg. tit. 14 § 6301.1.  The complaint must be filed not later than one year after the DCHA act or failure to act that constitutes the basis for the grievance."  D.C. Mun. Reg. tit. 14 § 6301.3.

## VII.    CLAIMS

**Count I** - **Discriminatory exclusion from public housing based on Plaintiff's disability in violation of Section 504**

58.  Paragraphs 1-42 are repeated and realleged for the purpose of stating this claim.

59.  Plaintiff Franchett Jones is a qualified individual with a disability as defined by Section 504 of the Rehabilitation Act. As a lease-compliant public housing tenant, she is entitled to a transfer to a wheelchair accessible public housing unit as a reasonable accommodation to her mobility disabilities. Due to Defendants' discriminatory conduct, Plaintiff has been, and continues to be, humiliated, suffering from emotional distress and harm by her exclusion from participation in, and denied equal access to the benefits of basic features such as the bathrooms, bedrooms, and kitchen facilities of public housing in the District of Columbia based on her disability, in violation of Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794(a), and related federal regulations, 24 C.F.R. pt. 8; 24 C.F.R. pt 40. & App. A.

**Count II**- **Discriminatory Denial of Plaintiff's Reasonable Accommodations under the Fair Housing Act Amendments**

60.  Paragraphs 1- 42 are repeated and realleged for the purpose of stating this claim. Despite her requests to transfer dating back to November 2005, Defendants have denied Plaintiff Franchett Jones a transfer to a wheelchair accessible public housing unit, and a waiver of the credit review to effectuate her transfer within the public housing system as a reasonable accommodation to her mobility disabilities, in violation of the Fair Housing Act Amendments, 42 U.S.C. §§3601-3604; 24 C.F.R. §100.204. Consequently, Plaintiff has been, and continues to be,

humiliated, suffering from emotional distress and harmed by Defendants' discriminatory conduct.

**Count III – Discriminatory Exclusion from Public Housing based on Disability in violation of the DC Human Rights Act**

61. Plaintiff reasserts and realleges paragraphs 1-57 above for the purpose of stating this claim. Due to Defendants' discriminatory conduct, Plaintiff has been, and continues to be humiliated, suffers emotional distress, and harmed by her exclusion from participation in, and denied equal access to the benefits of basic features such as the bathrooms, bedrooms, and kitchen facilities of public housing in the District of Columbia based on her disability, in violation of the DC Human Rights Act, D.C. Code § 2-1402.21.

**Count IV – Failure to Transfer Plaintiff to an Accessible Unit as a Reasonable Accommodation in violation of DCMR tit.14 §§ 7403 and 7404**

62. Paragraphs 1- 57 are repeated and realleged for the purpose of stating this claim.

63. Defendants' failure to process Plaintiff Franchett Jones' request to transfer to an accessible unit as a reasonable accommodation to her mobility disabilities within 60 days of her request in November 2005 in violation of D.C. Mun. Reg. tit. 14 §7404.6, has caused, and continues to cause Ms. Jones humiliation, emotional distress and harm as a result of Defendants' discriminatory conduct.

64. Defendants' failure to transfer Ms. Jones to an accessible unit as a reasonable accommodation to her mobility disabilities in violation of D.C. Mun. Regs. tit. 14 § 7403.3(a) and (e) has caused, and continues to cause, Ms. Jones harm.

**Count V- Failure to Transfer Plaintiff on an Emergency Medical Basis in Violation of DCMR tit.14 § 6401.**

65. Paragraphs 1-57 are repeated and realleged for the purpose of stating this claim.

66. Plaintiff Franchette Jones has suffered, and continues to suffer, harm from the Defendants' failure to transfer her on an emergency basis to a wheelchair accessible public housing unit to alleviate the conditions of hardship, and threats to her life, health, or safety in her inaccessible unit without safe entry or egress, or access to the bathroom or bedrooms or kitchen facilities, in violation of D.C. Mun. Reg. tit. 14 § 6401.

67. In addition, Defendants' failure to transfer Ms. Jones to an accessible public housing unit to effectuate DCHA's goals of creating accessible units and ensuring occupancy by public housing tenants who need the accessible features, violates D.C. Mun. Reg. tit. 14 § 6401. As a result, Plaintiff has been, and continues to be, humiliated, suffering from emotional distress and harmed due to her lack of access to the entrance to her unit and the bathroom and bedrooms of her DCHA unit.

**Count VI-** **Failure to Ensure the Application of Established Tenant Selection Criteria for Assignment to UFAS Units at Henson Ridge's selection in Violation of D.C. Munic. tit.14 Reg. § 6113**

68. Paragraphs 1- 57 are repeated and realleged for the purpose of stating this claim.

69. Defendants' failure to ensure that the criteria and selection process for assignment of UFAS units at Henson Ridge complied with § 504 of the Rehabilitation Act subjected Plaintiff to humiliation, emotional distress and harm in violation of D.C. Mun. Reg. tit. 14 § 6113.

**Count VII-** **Failure to Afford Plaintiff Due Process in violation of D.C. Mun. Regs. tit.14 §§ 6107 and 6301**

70. Paragraphs 1- 57 are repeated and realleged for the purpose of stating this claim.

71. By providing a defective notice that failed to adequately specify the reasons for denying Plaintiff Franchett Jones an accessible unit at Henson Ridge, and by failing to afford adequate time to appeal the rejection, Defendants deprived Ms. Jones of due process in violation of D.C. Mun. Regs. tit. 14 §§ 6107 and 6301. Consequently, Ms. Jones has suffered, and continues to suffer humiliation, emotional distress and harm.

## VIII. RELIEF SOUGHT

72. To remedy Defendants' federal statutory and regulatory violations, Plaintiff respectfully requests that the Court:

A. Exercise jurisdiction over this matter.

B. Issue a declaration and order that Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and the federal regulations promulgated thereunder, 24 C.F.R. pt. 8; 24 C.F.R. pt. 40 & App. A; and FHAA, 42 U.S.C. §§ 3601-3604, 24 C.F.R. §100.204, D.C. Code §2-1402.21, and D.C. Mun. Regs. tit.14 §§6113, 6301, 6401, 7403, and 7404.

C. Issue a preliminary and permanent injunctive relief to enjoin Defendants to assure their compliance with Section 504, 29 U.S.C. § 794, 24 C.F.R. pt. 8; FHAA, 42 U.S.C. §§ 3601-3604, 24 C.F.R. §100.204, D.C. Code § 2-1402.21, and D.C. Mun. Regs., tit.14 §§6113, 6301, 6401, 7403, and 7404.

D. Grant Plaintiff an immediate transfer to a four-bedroom wheelchair-accessible public housing unit at Henson Ridge. If a four bedroom accessible unit is not available immediately due to occupancy by a public

housing family who needs the accessible features of the unit, transfer Plaintiff to a four bedroom accessible unit at another property. If a four-bedroom wheelchair-accessible unit is not immediately available in the public housing system, transfer Plaintiff to a three-bedroom wheelchair accessible unit as an interim measure.

E. Issue an order mandating that Defendants finance the aforementioned transfer, i.e., pay for Plaintiff's moving expenses.

F. Issue an order granting Plaintiff reasonable attorneys' fees and costs in accordance with 29 U.S.C. § 794 (a), 42 U.S.C. §3613, D.C. Code § 2-1403.

G. Issue an order directing Defendants to pay compensatory damages in the amount of $30,000 to Plaintiff Franchett Jones.

H. Grant Plaintiff additional relief as this Court may deem appropriate.

Respectfully submitted,

_____

Marjorie Rifkin, DC Bar # 437076
University Legal Services- P&A
220 I Street, NW #202
Washington, DC 20002
(202) 547-0198 ext. 128
(202) 547-2662 (fax)

Dated: November 1, 2007